NATIONAL REALTY AND INVESTMENT COMPANY, Plaintiff-Appellant and Cross-Appellee,. v. THE DEPARTMENT OF REVENUE, Defendant-Appellee and Cross-Appellant.

Second District   No. 2—85—0200

Opinion filed June 20, 1986.

Kimball R. Anderson, Jane B. McCullough, and Crane C. Hauser, all of Winston & Strawn, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Gabriel Rodriguez, Jill Wine-Banks, and Roma Jones Stewart, Assistant Attorneys General, of Chicago, of counsel), for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, National Realty and Investment Company (taxpayer), appeals from that part of the judgment of the trial court confirming the decision of the Department of Revenue (Department) that yearly installments from the 1960 sale of the Drake Hotel by taxpayer were taxable income in Illinois for the tax years 1972 through 1975, 1978 and 1979 under the provisions of the Illinois Income Tax Act (Act). Taxpayer raises two issues on appeal: (1) whether the Act taxes the taxpayer's gain arising from the sale of property nine years before the Act's effective date; and (2) whether denial of the valuation-limitation deduction to corporate taxpayers violates the Illinois and Federal constitutions. The Department has cross-appealed from the remaining portion of the judgment below which reversed the Department's determination that taxpayer's gain on the sale of property in Florida in 1973 was business income and taxable in Illinois, raising the issue of whether the sale resulted in taxable "business income."

A stipulation of facts was agreed to by the parties during the administrative proceeding before the Department's hearing officer. The pertinent facts are as follows. Taxpayer is a Delaware corporation qualified to do business in Illinois with its principal place of business in Oak Brook, Illinois. On December 31, 1960, taxpayer sold the Drake Hotel in Chicago for a total selling price of $10,372,907.77, realizing a gain on the sale of $7,350,813.06. The purchaser assumed a mortgage of $1,712,907.77 with the balance of $8,660,000 to be paid in annual installments of $250,000.

Taxpayer made an election under section 453 of the Internal Revenue Code (26 U.S.C. sec. 453 (1982)) to report its gain on the sale by the installment method of accounting, reporting as income that portion of each year's payment that the gain on the sale ($7,350,813.06) bore to the total contract price ($8,660,000) or 84.88% of $250,000 which is $212,205.92.

Taxpayer also purchased property in Vero Beach, Florida, on June 30, 1967, for $405,226.59, and sold it on April 11, 1973, for $770,000, realizing a gain of $364,773.41.

In 1972 and 1973, taxpayer deducted $212,205.92 from its taxable income and in 1973 also deducted the gain attributable to the sale of the Florida property. In 1975, the Department mailed taxpayer a timely notice of deficiency assessing additional taxes of $9,230.61 for

1972 and $22,258.22 for 1973. In October 1975, taxpayer filed a protest to the Department's notice of deficiency. Taxpayer again claimed a deduction for the gains realized on the Drake Hotel sale on its 1974, 1975 and 1978 Illinois tax returns. The Department disallowed these deductions treating them as "mathematical errors," and required taxpayer to pay the deficiency immediately. Taxpayer filed a claim for refund due, and subsequently filed a timely protest to the Department's denial of the refund.

In 1979, the purchaser of the Drake Hotel accelerated the payments due taxpayer, paying the remaining balance owed on the contract. On its 1979 amended Illinois income tax return taxpayer deducted $1,666,110.02 of gain realized from the sale of the Drake Hotel and claimed a refund as a result of the claimed deduction of $66,644.40 of the $71,862.37 of the Illinois income taxes paid, plus interest. Taxpayer filed a timely protest to the Department's denial of the claimed refund.

A hearing was held before a Department hearing officer on September 25, 1980, and a decision was issued on December 1, 1980. The Department by its hearing officer found that as income is not "realized" for purposes of the Illinois income tax until reported on the taxpayer's Federal return and included in its computation of Federal taxable income, this tax is not unconstitutionally retroactive. The hearing officer also found that, although the State granted taxpayer a valuation-limitation deduction for the gain reported in 1969 and 1970 pursuant to *Thorpe v. Mahin* (1969), 43 Ill. 2d 36, 250 N.E.2d 633, the legislature amended the Act in 1971, effectively denying a valuation limitation to corporations. The hearing officer found no equal protection violation, noting that the Illinois Supreme Court has upheld differential treatment of corporate and individual taxpayers and found no violation of the "8 to 5" ratio required by article IX, section 3(a), of the Illinois Constitution.

Finally, as to the Vero Beach property, the hearing officer found that taxpayer purchased the lots with the intention of building condominiums on the property. Because of various zoning restrictions, taxpayer could not use the property to build condominiums and neither made improvements on the property nor rented the real estate. it was sold for a gain of $364,773.41 in 1973. Taxpayer paid a tax in Florida in 1973 on only a portion, or $81,876, of the gain. The hearing officer stated that the record, although not "overburdened" with facts on taxpayer's overall business character, shows that taxpayer dealt in real estate, both from the standpoint of management of improved properties and the development of condominiums. He concluded that

the ultimate disposal of the property was business income and taxable in Illinois. The hearing officer then assessed deficiencies for the years of 1972 and 1973 and denied refunds for the remaining years in question.

Taxpayer sought judicial review of the Department's decision. The trial court affirmed the decision of the Department as far as the constitutionality of the taxation of the income from the sale of the Drake Hotel. The court found, however, that based on the factual findings of the hearing officer, the income from the sale of the Vero Beach property was nonbusiness income. The court stated that the law requires that not only the acquisition but also the management and disposition of the property be considered in determining whether or not the transaction resulted in business or nonbusiness income. The court also relied on examples contained in the Department's regulations. It should be noted that the examples relied on are not contained in the recently codified Department of Revenue income tax regulations. This appeal and cross-appeal followed.

■■ Taxpayer first contends that the Act must be construed to apply prospectively only to gains realized after the effective date of the Act, August 1, 1969, a conclusion it argues is supported by the plain language of the Act and the supreme court decisions of *Thorpe v. Mahin* (1969), 43 Ill. 2d 36, 250 N.E.2d 633, and *Mitchell v. Mahin* (1972), 51 Ill. 2d 452, 283 N.E.2d 465. Taxpayer contends that, according to Federal income tax and generally accepted accounting definitions, the entire gain on the sale of the Drake Hotel was realized when the event giving rise to the income occurred, in 1960, and cannot be taxed by the Act which was not effective until 1969. Any other interpretation, it argues, would result in an unconstitutional retroactive tax.

This type of situation, where a sale occurred prior to the effective date of the State income tax but installment payments were received and reported for Federal tax purposes under section 453 after the State tax was in effect, has not previously been addressed by the Illinois courts. (*Cf. Warren Realty Co. v. Department of Revenue* (1978), 62 Ill. App. 3d 450, 379 N.E.2d 100 (tax on the gain from the sale of property acquired 19 years before the effective date of the Act but sold after the Act was in effect was held not to be a retroactive tax).) Courts of other jurisdictions have addressed this issue, however, and have unanimously rejected arguments essentially identical to those presented here. The States deciding the issue had similar income tax statutes which impose an income tax which is a flat percentage of the taxpayer's adjusted Federal income tax liability for the taxable year.

Under Illinois' statute, a corporation's base income is equal to the taxpayer's "taxable income" (Ill. Rev. Stat. 1983, ch. 120, par. 2—203(b)(1)), subject to certain adjustments not directly relevant here (Ill. Rev. Stat. 1983, ch. 120, par. 2—203(b)(2)). "Taxable income" is defined by the Act as "taxable income properly reportable for Federal income tax purposes for the taxable year under the provisions of the Internal Revenue Code." (Ill. Rev. Stat. 1983, ch. 120, par. 2—203(e)(1).) The other jurisdictions presented with this issue have held that profits from an installment sale are properly taxable in the years they are received and reported on the taxpayer's Federal income tax under the section 453 installment method, even though the gain would not have been taxable at the time of the actual sale. (*Johnson v. Department of Revenue* (1982), 387 Mass. 59, 438 N.E.2d 1059; *Rosenblatt v. New York State Tax Com.* (1981), 85 A.D.2d 770, 445 N.Y.S.2d 289; *Roger Dean Enterprises, Inc. v. State Department of Revenue* (Fla. 1980), 387 So. 2d 358; *Dery v. Lindley* (1979), 57 Ohio St. 2d 5, 385 N.E.2d 291; *Fulton v. Lindley* (1979), 57 Ohio St. 2d 10, 385 N.E.2d 293; *Tiedemann v. Johnson* (Me. 1974), 316 A.2d 359; *Altsuler v. Peters* (1973), 190 Neb. 113, 206 N.W.2d 570; *Marco Associates, Inc. v. Comptroller of Treasury* (1972), 265 Md. 669, 291 A.2d 489; *Katzenberg v. Comptroller of Treasury* (1971), 263 Md. 189, 282 A.2d 465.) Courts have recognized that the legislative intent in basing State income tax on Federal taxable income was to create a clear, objective criterion for assessing and collecting taxes. (*Tiedemann v. Johnson* (Me. 1974), 316 A.2d 359, 362.) "This is a formula or yardstick objectively derived which initially takes no account of the source, nature or composition of the funds; it is simply a figure developed by the federal return." *Katzenberg v. Comptroller of Treasury* (1971), 263 Md. 189, 204-05, 282 A.2d 465, 473.

The cases further determined that the gain was actually realized when payment was received. The Nebraska Supreme Court in *Altsuler v. Peters* (1973), 190 Neb. 113, 206 N.W.2d 570, stated:

"The taxpayer, in a sense, realizes a gain on an appreciated asset when he sells it, even though he has contracted to take the proceeds over a period of time. Under the provisions of section 453, I.R.C. 1954, if the requirements of that section are met, he may report the gain in installments. The statute and the regulation give him the opportunity of postponing the recognition of a portion of the gain. In effect, he has the option of treating the gain as completely realized at the time of sale, or he may postpone partially the tax consequences until he has actual realization by receiving the installment. *It makes little dif-*

*ference whether we say the gain is realized but recognition is postponed, or say that there is no realization until receipt of the installment."* (Emphasis added.) 190 Neb. 113, 126, 206 N.W.2d 570, 578.

The receipt of payment is thus the taxable event upon which the tax is levied (*Dery v. Lindley* (1979), 57 Ohio St. 2d 5, 7, 385 N.E.2d 291, 292), and the tax is not directed at payments received from installment sales before the date of its enactment (*Marco Associates, Inc. v. Comptroller of Treasury* (1972), 265 Md. 669, 76-77, 291 A.2d 489, 493). As the taxable event, the receipt of the installments, is a current event, there is no retroactivity. (*Johnson v. Department of Revenue* (1982), 387 Mass. 59, 63, 438 N.E.2d 1059, 1062.) We are not persuaded by taxpayer's argument that Federal income tax and accounting definitions of realization must be used in light of the reasoning of the other jurisdictions which have dealt with this issue.

Further, the cases cited above have uniformly rejected the contention that the inclusion of installment payments in taxable income from sales made prior to the effective date of the income tax statute results in an unconstitutional retroactive tax. While it is recognized that a tax' retroactive application may be so harsh and oppressive as to constitute a violation of due process (*Welch v. Henry* (1938), 305 U.S. 134, 147, 83 L. Ed. 87, 93, 59 S. Ct. 121, 125; *General Telephone Co. v. Johnson* (1984), 103 Ill. 2d 363, 379, 469 N.E.2d 1067), a "tax being upon realized gain, it may constitutionally be imposed upon the entire amount of the gain realized within the taxable period, even though some of it represents enhanced value in an earlier period before the adoption of the taxing act" (*MacLaughlin v. Alliance Insurance Co.* (1932), 286 U.S. 244, 250, 76 L. Ed. 1083, 1086, 52 S. Ct. 538, 540).

Taxpayer, however, contends that the tax results in an unfair disadvantage to an installment-basis taxpayer as the taxpayer validly elected a method of Federal tax reporting with no inkling that the election would serve as the basis of later State tax liability on the sale. This argument also has been rejected in other jurisdictions. One of the risks a taxpayer takes when he elects installment reporting is that the tax law may undergo change. *Rosenblatt v. New York State Tax Com.* (1981), 85 A.D.2d 770, 771, 445 N.Y.S.2d 289, 290; see also *Tiedemann v. Johnson* (Me. 1974), 316 A.2d 359, 366; *Picchione v. Commissioner of Internal Revenue* (1st Cir. 1971), 440 F.2d 170, 173.

Taxpayer also argues that *Thorpe v. Mahin* (1969), 43 Ill. 2d 36, 250 N.E.2d 633, and *Mitchell v. Mahin* (1972), 51 Ill. 2d 452, 283 N.E.2d 465, require a different result in Illinois than the decisions of

other jurisdictions. *Thorpe* was a constitutional challenge to Illinois' income tax law. In finding the tax constitutional, the supreme court stated that "[t]he Act is clear, indeed it expressly provides, that the tax shall operate prospectively beginning August 1, 1969." (*Thorpe v. Mahin* (1969), 43 Ill. 2d 36, 50, 250 N.E.2d 633.) Based solely on legislative intent, the court construed the Act to include a "valuation limitation" for gains accruing prior to the effective date of the Act. The court noted, "[i]t is questionable that the General Assembly, by the nonspecific language which it employed, intended to adopt the basis dates from the Internal Revenue Code when such dates under our newly enacted Income Tax Act would raise doubts as to its validity." (43 Ill. 2d 36, 51-52, 250 N.E.2d 633.) Taxpayer contends that the Illinois Supreme Court, therefore, has rejected the "yardstick" approach of *Katzenberg v. Comptroller of Treasury* (1971), 263 Md. 189, 204-05, 282 A.2d 465, 472-73, and other cases which adopt Federal taxable income as the State tax base regardless of when the gain actually accrued. Taxpayer also cites *Mitchell v. Mahin* (1972), 51 Ill. 2d 452, 283 N.E.2d 465, which adhered to the reasoning of *Thorpe* and suggested that the court's interpretation had been ratified by the legislature's enactment of an amendment adopting a valuation limitation for individuals, trusts and estates, despite a strong dissent arguing that Illinois should follow the "yardstick" approach. In addition, taxpayer points to the fact that several cases cite *Thorpe* as presenting an "alternate" approach. See *Roger Dean Enterprises, Inc. v. State Department of Revenue* (Fla. 1980), 387 So. 2d 358, 364; *Dery v. Lindley* (1979), 57 Ohio St. 2d 5, 385 N.E.2d 291, 293; *Tiedemann v. Johnson* (Me. 1974), 316 A.2d 359, 362-63.

*Thorpe* and *Mitchell*, however, did not address the specific issue presented here, that of a sale by a corporation which occurred prior to the Act but with installments received and federally reported after the Act was effective. Moreover the supreme court's decisions were based on legislative intent rather than on constitutionality. (*Thorpe v. Mahin* (1969), 43 Ill. 2d 36, 54, 250 N.E.2d 633; *Mitchell v. Mahin* (1972), 51 Ill. 2d 452, 456, 283 N.E.2d 465.) The cases did not hold that the type of tax here is unconstitutional or retroactive. In fact, Justice Davis' dissent in *Mitchell v. Mahin* (1972), 51 Ill. 2d 452, 283 N.E.2d 465 (Davis, J., dissenting), disagreed with the majority's disposition in *Thorpe* and *Mitchell* which, based on legislative intent, interpreted the Act to include a valuation limitation. Instead, in a well-reasoned dissent concurred in by Justice Schaefer, he would have upheld the Act without a valuation limitation. He found that, based on the legislative history of the Act, the legislative intent was not to

grant such a limitation (51 Ill. 2d 452, 466-68, 283 N.E.2d 465 (Davis, J., dissenting)) and, based on case law from the United States Supreme Court and other jurisdictions, a tax on gain received or "realized" after the effective date of the Act was not retroactive, even though a portion of the gain may have been attributable to increases in value of the income-producing items prior to the effective date or attributable to something done prior to such date. 51 Ill. 2d 452, 464, 283 N.E.2d 465 (Davis, J., dissenting).

Further, other decisions in Illinois have approved the legislature's use of Federal-taxable income as the starting point for State net income. (*Bodine Electric Co. v. Allphin* (1980), 81 Ill. 2d 502, 512, 410 N.E.2d 828; *Caterpillar Tractor Co. v. Lenckos* (1979), 77 Ill. App. 3d 90, 102, 395 N.E.2d 1167, *aff'd* (1981), 84 Ill. 2d 102, 417 N.E.2d 1343.) Therefore, we follow the reasoning of Justice Davis' dissent in *Mitchell* and the courts of other jurisdictions which have addressed this precise issue based on statutes nearly identical to the one involved here. As the gain from the sale of the Drake Hotel was "realized" when the installments were received, the payments were properly taxable by Illinois.

■ Taxpayer next argues that the valuation-limitation deduction should apply here as the 1971 legislative amendment which made the limitation available only to individuals, trusts and estates is unconstitutional.

*Thorpe v. Mahin* (1969), 43 Ill. 2d 36, 250 N.E.2d 633, determined that legislative intent required that the Act should be given prospective effect only, stating "statutes will not be construed retroactively unless it clearly appears such was the legislative intent." (43 Ill. 2d 36, 50-51, 250 N.E.2d 633.) The court then set up the "valuation limitation" which means that the August 1, 1969, value of property acquired prior to that date should be used in the computation of gains or losses on the subsequent disposition of the property. Essentially, this means that the August 1, 1969, market value of the property becomes its "basis" for purposes of the Illinois income tax. Therefore, the taxable gain on stock bought, for example, in 1965 for $20,000, with a fair market value of $29,000 on August 1, 1969, and sold in 1970 for $30,000 would be $1,000. Here, then, as the Drake Hotel was sold in 1960, the valuation limitation would make the gain nontaxable as the gain accrued before August 1, 1969.

In 1971, the legislature amended the Act, specifically giving the valuation-limitation deduction to individuals (Ill. Rev. Stat. 1983, ch. 120, par. 2—203(a)(2)(G)) and trusts and estates (Ill. Rev. Stat. 1983, ch. 120, par. 2—203(c)(2)(F)). Partnerships were later also given the

valuation-limitation deduction. (Ill. Rev. Stat. 1983, ch. 120, par. 2—203(d)(2)(E).) Another subsection was added by the amendment and stated: "Except as expressly provided by this Section, there shall be no modifications or limitations on the amounts of income, gain, loss or deduction taken into account in determining gross income, adjusted gross income or taxable income ***." (Ill. Rev. Stat. 1983, ch. 120, par. 2—203(h).) Therefore, corporations are effectively denied the valuation limitation.

In *Mitchell v. Mahin* (1972), 51 Ill. 2d 452, 283 N.E.2d 465, five taxpayers, none of them corporations, sought a declaration that the Act continue to be construed to include a valuation limitation and that "capital assets" subject to the limitation not be restricted to only those contained in the Internal Revenue Code definition. In that case, the Department argued that the portion of *Thorpe* which found a legislative intent to establish a valuation limitation should be overruled. *Mitchell* held that the legislature's intent was to include a valuation limitation in the Act and that it applied to the type of assets involved in the action. (51 Ill. 2d 452, 456-57, 283 N.E.2d 465.) The court stated that "after this court has construed a statute, that construction becomes, in effect, a part of the statute and any change in interpretation can be effected by the General Assembly if it desires so to do." (51 Ill. 2d 452, 456, 283 N.E.2d 465.) The court noted that the legislative amendment "with exceptions not here relevant" enacted the valuation limitation. (51 Ill. 2d 452, 456, 283 N.E.2d 465.) The court, however, was not called upon to decide the constitutionality of the provision which omitted the valuation limitation for corporations as the plaintiffs in the suit were individuals.

Taxpayer argues that granting the limitation to individual taxpayers and trusts and estates while denying it to corporations results in unconstitutional discrimination, with an arbitrary and unreasonable burden shouldered by some taxpayers but not others. It cites *Crocker v. Finley* (1984), 99 Ill. 2d 444, 459 N.E.2d 1346, which states, "An unreasonable or arbitrary classification for tax purposes places upon the members of a class a burden not shared by others and is violative of due process, as well as equal protection, guaranteed by our Constitution." 99 Ill. 2d 444, 457, 459 N.E.2d 1346.

The power of the legislature to make classifications, particularly in the field of taxation, however, is very broad (*Continental Illinois National Bank & Trust Co. v. Lenckos* (1984), 102 Ill. 2d 210, 216, 464 N.E.2d 1064), and the fourteenth amendment imposes no iron rule or equal taxation (*Thorpe v. Mahin* (1969), 43 Ill. 2d 36, 45, 250 N.E.2d 633). Legislation which does not create a suspect classification

or infringe upon a fundamental right, but rather involves economic and social-welfare policy, will be upheld against equal protection challenges if it is rationally related to the achievement of a legitimate State interest. (*Illinois Housing Development Authority v. VanMeter* (1980), 82 Ill. 2d 116, 119-22, 412 N.E.2d 151; *Clayton v. Village of Oak Park* (1983), 117 Ill. App. 3d 560, 566, 453 N.E.2d 937.) In taxation, even more than in other fields, legislatures possess the greatest freedom in classification. (*Madden v. Kentucky* (1940), 309 U.S. 83, 88, 84 L. Ed. 590, 593, 60 S. Ct. 406.) There is a presumption of constitutionality which can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. (*Williams v. City of Chicago* (1977), 66 Ill. 2d 423, 433, 362 N.E.2d 1030.) " 'The burden is on the one attacking the legislative arrangement to [negate] every conceivable basis which might support it.' [Citation.]" *Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 364, 35 L. Ed. 2d 351, 358, 93 S. Ct. 1001, 1006.

■ Taxpayer here has clearly not met this burden. This is not an unreasonable or arbitrary classification. *Thorpe*, which upheld the taxation of corporations at a higher rate than individuals, stated that there are sufficient differences between "the privilege of earning and receiving income as a corporate entity and the privilege of earning or receiving income as an individual *** to justify their being taxed at a different rate." (*Thorpe v. Mahin* (1969), 43 Ill. 2d 36, 47, 250 N.E.2d 633.) The court noted that the advantages of doing business as a corporation are obvious and include the continuity of the business without interruption by death or dissolution, the transfer of property interests by the disposition of shares of stock, control and management by corporate directors and the general absence of individual liability. (43 Ill. 2d 36, 46-47, 250 N.E.2d 633.) Therefore, there are real, recognizable differences between corporations and other taxpayers and not granting corporations a deduction allowed to other taxpayers is not unreasonable or arbitrary.

In *Warren Realty Co. v. Department of Revenue* (1978), 62 Ill. App. 3d 450, 379 N.E.2d 100, the court upheld a tax where a corporate taxpayer sold real estate in 1972 which was purchased in 1950 and was taxed on the entire gain, including the appreciation which occurred in the years before 1969. The court noted that this issue was not raised in *Thorpe* and found that the language in *Mitchell*, " 'with exceptions not here relevant,' " indicated tacit approval of the denial of the valuation limitation to corporations. (62 Ill. App. 3d 450, 452, 379 N.E.2d 100.) The court held that "[s]ince plaintiff actually real-

ized no gain until after the effective date of the Act, we conclude that the entire amount of such gain was properly taxed as income." 62 Ill. App. 3d 450, 453, 379 N.E.2d 100; accord, *Weyerhaeuser Co. v. Department of Revenue* (1984), 127 Ill. App. 3d 323, 327, 469 N.E.2d 267; *Chapman v. Department of Revenue* (1982), 110 Ill. App. 3d 82, 441 N.E.2d 1156; *Reineman v. Department of Revenue* (1982), 106 Ill. App. 3d 817, 436 N.E.2d 675; *Brown v. Department of Revenue* (1980), 89 Ill. App. 3d 238, 411 N.E.2d 882.

Taxpayer argues that the reasoning in *Warren Realty* is faulty, interprets *Thorpe* incorrectly, and should not be followed here. We disagree. Taxpayer interprets *Thorpe* as reading a valuation limitation into the Act to avoid retroactive taxation. It contends that this limitation, therefore, cannot be constitutionally denied to corporate taxpayers. The decision in *Thorpe*, however, was based on legislative intent, and "*Thorpe* \*\*\* found no constitutional infirmity in the General Assembly's adoption of Federal taxable income as a determinant of Illinois income tax liability." (*Bodine Electric Co. v. Allphin* (1980), 81 Ill. 2d 502, 512, 410 N.E.2d 828.) *Mitchell* expressly provided that the decisions were based on legislative intent, and the legislature has clearly expressed its intent to deny the limitation to corporations. *Thorpe*, therefore, cannot be read to mandate a valuation limitation for corporations.

■ Taxpayer finally contends that the legislative amendment violates the constitution's "8 to 5" ratio provision. The constitutional provision states, "[i]n any such tax imposed upon corporations the rate shall not exceed the rate imposed on individuals by more than a ratio of 8 to 5." (Ill. Const. 1970, art. IX, sec. 3(a).) Taxpayer contends that giving the valuation limitation to individuals but not corporations results in an effective ratio of 4 to 0. However, the provision refers to rate, not effective rate. The granting of a deduction is a privilege created by statute as a matter of legislative grace, and a taxpayer is not entitled to a deduction unless clearly allowed by statute. (*Bodine Electric Co. v. Allphin* (1980), 81 Ill. 2d 502, 512-13, 410 N.E.2d 828.) The legislature, therefore, has authority to grant a deduction to one class of taxpayers and not to another. The constitution recognizes that there will be differences in the deductions granted to various classes of taxpayers and merely imposes a requirement of reasonableness on these deductions. (*Warren Realty Co. v. Department of Revenue* (1978), 62 Ill. App. 3d 450, 454, 379 N.E.2d 100; Ill. Const. 1970, art. IX, sec. 2.) As we have determined that there are differences between corporate and other classes of taxpayers, that provision has not been violated here. Denying corporate taxpayers the val-

uation-limitation deduction does not result in unconstitutional discrimination under the Illinois or Federal constitutions.

■ In its cross-appeal, the Department argues that the sale of the Vero Beach, Florida, property by taxpayer resulted in "business income" and, therefore, a portion of the income was properly taxable in Illinois. This property was purchased for development of condominiums in 1967 and was sold in 1973, with taxpayer realizing a gain of $364,773.41. Because of zoning restrictions, the taxpayer did not build condominiums or make improvements to the property.

The Illinois Income Tax Act provides for "allocation" of nonbusiness income and "apportionment" of business income. Allocation is a process whereby certain types of income, called "nonbusiness" income, generally in the nature of passive or investment income, are assigned in their entirety to a particular jurisdiction for tax purposes. Under apportionment, the taxpayer's normal or business income is mathematically divided among the various jurisdictions in which it does business to determine the measure of local tax. Apportionment is generally accomplished by means of a three-factor formula, utilizing property, payroll and sales in the taxing jurisdiction over property, payroll and sales in all jurisdiction. (*Roger Dean Enterprises v. State Department of Revenue* (Fla. 1980), 387 So. 2d 358, 361.) In Illinois, the Act provides that for persons other than residents (which includes corporations), business income is apportioned according to the three-factor formula (Ill. Rev. Stat. 1983, ch. 120, par. 3—304(a)) and the nonbusiness gain or loss from the sale of real property is allocable to Illinois only if the property is located in this State (Ill. Rev. Stat. 1983, ch. 120, par. 3—303(b)(1)). Therefore, if the gain on the sale of the Vero Beach property is considered nonbusiness income, it is taxable only in Florida. If it is considered business income, a portion of the gain is properly taxable in Illinois. Business income "means income arising from transactions and activity in the regular course of the taxpayer's trade or business, *** and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations." (Ill. Rev. Stat. 1983, ch. 120, par. 15—1501(a)(1).) The Department presumes that a taxpayer's income is business income unless it is clearly classifiable as nonbusiness income. 86 Ill. Adm. Code, ch. 1, sec. 100.3050(a).

The Department and taxpayer agree that it is taxpayer's burden to show that the gain in question was nonbusiness income. The Department argues that taxpayer, based on the limited facts it presented, failed to meet its burden of demonstrating the nonbusiness

nature of the income. The Department relies on cases from other jurisdictions which have stated that the statute establishes two tests to determine if the income in question is business income, which both parties agree apply here. Under the transactional test, set out by the first clause of the definition, income is classified as business income if it is attributable to a type of business transaction in which taxpayer regularly engages. (*District of Columbia v. Pierce Associates, Inc.* (D.C. 1983), 462 A.2d 1129, 1130.) The second clause of the statutory definition sets out an alternative, functional test, under which all gain from the disposition of property is considered business income if the property disposed of was used by the taxpayer in its regular trade or business operations. (*Atlantic Richfield Co. v. State* (1979), 198 Colo. 413, 417, 601 P.2d 628, 631.) If either test is met, the income is business income.

Taxpayer maintains that the income from the sale was nonbusiness income under the definition as (1) it is not in the business of selling improved real estate, so the sale was not in the regular course of its trade or business, and (2) the property was never used by taxpayer in its regular trade or business operations.

On this record, taxpayer had not met its burden to show that this gain was nonbusiness income. The only evidence presented by taxpayer as to its normal business operations was the corporation's articles of incorporation, its State and Federal income tax returns for the years in question, and corporate balance sheets. There is nothing in the parties' stipulation of facts regarding the actual nature of taxpayer's business. Taxpayer's articles of incorporation are very general and state that the nature of the business is, among other things:

> "(a) To acquire by purchase, subscription or otherwise and to own, hold, sell, negotiate, assign, dispose of, exchange, transfer, pledge, hypothecate or mortgage, guarantee, deal in and loan or borrow money upon, \*\*\* real and personal property of every kind, character and description whatsoever \*\*\*."

Other provisions generally allow the corporation to deal in securities, loan money, and engage in any mercantile, manufacturing, or trading business. Its income tax returns reflect income from profits, from capital gains, from rents and from dividends and interest. The corporate balance sheets list assets including cash, certificates of deposits, accounts and notes receivable, inventories of saleable merchandise, stock investments, a hotel, and other property and equipment, including land and improvements.

The only facts before the hearing officer were, therefore, the articles of incorporation, the name of the corporation, tax returns and

balance sheets, and information regarding the transactions at issue before him. This information is insufficient to support his finding that taxpayer's "overall business character" was dealing "in real estate, both from the standpoint of management of improved properties and the development of condominiums." The facts provided are not adequate for a determination of the actual nature of taxpayer's business, which, from what is in the record, is apparently varied and diversified. Therefore, based on the broad nature of the taxpayer's business shown by the evidence in the record, both the transactional and functional tests can be considered met. Taxpayer did not meet its burden to show that the gain from the sale of the Vero Beach property is nonbusiness income. The gain, therefore, was properly taxable in Illinois.

The judgment of the trial court is affirmed as to the direct appeal and reversed as to the cross-appeal, and the Department's decision is reinstated.

Affirmed in part, reversed in part.

STROUSE and LINDBERG, JJ., concur.