SECOND DIVISION

MAY 16, 2000

1-99-0324

AUTOMATIC DATA PROCESSING, INC.  ) Appeal from the

& ADP ATLANTIC, INC., ADP EAST,  ) Circuit Court

INC., ADP CENTRAL, INC., &   ) of Cook County

ADP NORTH AMERICA, INC.   )

(subsidiaries of AUTOMATIC   )

DATA PROCESSING, INC.)   ) 

   ) 

Plaintiffs-Appellants   ) No. 96 L 50918

   )

v.   ) 

   )

THE ILLINOIS DEPARTMENT       )

OF REVENUE,   ) The Honorable

   ) Joanne L. Lanigan,

Defendant-Appellee.   ) Judge Presiding.

PRESIDING JUSTICE COUSINS delivered the opinion of the 

court:

The plaintiffs are a Delaware corporation and its subsidiaries.  The parent corporation provides a wide range of information and computing services to private business and government clients.  The wholly owned subsidiaries were formed in order to manage the company's investments as well as other intangible assets.  The Illinois Department of Revenue (the Department) audited the plaintiffs and determined that, because the parent had erroneously said that its subsidiaries were not part of its unitary business group, it had underpaid taxes in the amount of  $1,201,844, penalties included.  The plaintiffs protested, arguing that the income from the subsidiaries was not properly included with the income from the rest of its business because: (1) it was not business income; (2) apportioning this income according to the formula used for the income from the rest of the business would grossly and unfairly distort the proportionate amount of taxes it would be paying in Illinois; and (3) it was required to treat the subsidiaries as a separate unitary business group from the rest of its business because they were financial organizations.

The Department ruled against the plaintiffs, and the plaintiffs appealed to the circuit court.  The circuit court affirmed, whereupon the plaintiff appealed to this court.

BACKGROUND

The parent corporation plaintiff, Automatic Data Processing, Inc. (ADP), is a Delaware corporation with headquarters in New Jersey.  The company includes several divisions that perform different types of information services.  ADP’s employer services division, for instance, provides payroll and human resources services, such as payroll processing, payroll tax filing, benefit information and unemployment compensation management.  ADP’s dealer services division provides leasing, ordering, repair and inventory management for auto dealers.  Three other divisions perform similar functions for various other business and government clients.  The headquarters of the dealer services division is in Illinois.  The employer services division has several offices in Illinois.  All of the divisions do some business in Illinois.

In the course of its business, ADP’s employer services division often takes charge of as much as a billion dollars for its clients before paying the money out as taxes, wages and other disbursements.  ADP will invest this money in the few days it has control of it.  Investing this "float" is a significant source of ADP’s income.

ADP’s business has been very successful, and it has found itself with large sums of cash profits on its hands.  Initially, ADP’s treasury department managed the money, investing it in various types of marketable securities.  The treasury department worked from ADP’s headquarters in New Jersey.  Then ADP made a change in the way it handled its profits.

ADP formed a network of several wholly owned subsidiaries to manage its investments.  All of the subsidiaries are Delaware corporations.  ADP Atlantic, Inc. (Atlantic), was capitalized with $99 million in cash and $40 million in securities.  Subsequently, ADP has put more cash into Atlantic.  ADP claims that Atlantic was funded with “excess” cash, but it made substantial bond offerings about the same time and for approximately the same amount as the first two major infusions of cash into Atlantic.  

Atlantic earned interest by loaning money back to ADP.  By the end of the 1998 fiscal year, Atlantic had loaned ADP $547 million.  In December 1998, ADP started a revolving line of credit with Atlantic and borrowed money 42 times over the next seven months.  Atlantic also purchased $61.5 million of ADP’s common stock.  ADP asserts that this purchase was simply an ordinary investment.  However, it appears that the purchase was used to fund ADP’s employee stock option program.

ADP of North America, Inc. (North America), a subsidiary of Atlantic, was given the “ADP” trademark, and it charged ADP and the other subsidiaries royalties for use of the trademark.  North America then invested the royalties.  In 1989 North America paid ADP a dividend of over $21 million.

In 1998, ADP formed two more wholly owned subsidiaries, ADP East, Inc. (East), and ADP Central, Inc. (Central).  It capitalized the subsidiaries with marketable securities.  Central and East managed the securities and reinvested the yields.  ADP says that the funds for East came from its tax-filing business.  A large portion of the funds in East were overseen by Lehman Management Co. and Merrill Lynch Asset Management, Inc.

The subsidiaries had few employees.  The officers and directors of Atlantic, Central and East during the relevant period were largely directors and high ranking employees of ADP.

In 1992, the Illinois Department of Revenue conducted an audit of ADP and its subsidiaries.  It issued a notice of deficiency for the period from June 30, 1987, through June 30, 1989, in the amount of $1,201,844, penalties included.  According to the Department, ADP underestimated its taxes because it did not include the subsidiaries in the same unitary business group with the parent when calculating the business' taxable income. ADP filed a protest.  ADP also requested refunds for the two fiscal years, on the grounds that it had erroneously classified the interest from the securities held by its subsidiaries as business income instead of nonbusiness income.  The Department denied the refund.  The Department notified ADP that it was entitled to a refund of about $56,000 for an unrelated overpayment.  This refund has not been paid as of yet, and ADP has referenced this potential refund in its protest.

The parties entered lengthy stipulations of facts.  Administrative hearings were held on six days, after which an administrative law judge (ALJ) recommended that the taxes be assessed against ADP but that the penalties be waived.  ADP filed a motion for reconsideration.  The ALJ denied the motion after correcting a small factual error in the recommended disposition.

The Director of the Department accepted the ALJ’s recommendation.  ADP appealed to the circuit court pursuant to the Administrative Review Law (735 ILCS 5/3-101 
et
 
seq.
 (West 1996)).  The circuit court affirmed the decision of the Department, whereupon ADP appealed to this court. 

ANALYSIS

When a business operates in many states, the amount of its income that is fairly attributable to activities within each state must be determined before income tax constitutionally may be imposed.  
General Telephone Co. v. Johnson
, 103 Ill. 2d 363, 368-69, 469 N.E.2d 1067, 1070 (1984).  There are various alternative methods by which the income may be divided for taxing purposes among the states where the business operates.

First, income may be either allocated or apportioned.  When income is allocated it is all assigned to one particular state for taxing purposes, generally the commercial domicile of the company or the situs of the income-producing property.  35 ILCS 5/303 (West 1996). When a business’ income is apportioned it is divided up for taxing purposes among the various states in which the business operates. 35 ILCS 5/304(a) (West 1996). Apportionment is intended to assign the amount of income to a state that is proportional to the amount of income-producing activities in that state.  Business income is apportioned and nonbusiness income is allocated. 
National Realty and Investment Co. v. Department of Revenue
, 144 Ill. App. 3d 541, 553, 494 N.E.2d 924, 932 (1986). 

Income may be apportioned either with formula apportionment or with separate accounting.  Separate accounting attempts to separate out the parts of a business that operate entirely in the taxing state, and to treat this subset of the business as a distinct entity.  The income from that fictional entity is computed without regard to the out-of-state portion of the business.  Formula apportionment involves totaling the income of the entire business and applying a formula based on the ratio of the taxpayer’s activities in that state to its activities in all states.  
Citizens Utilities Co. v. Department of Revenue
, 111 Ill. 2d 32, 40, 488 N.E.2d 984, 987 (1986).

Separate accounting has fallen into disfavor for state income tax purposes since it either ignores or inadequately reflects the “subtle and unquantifiable transfers of value that take place among the components of a single enterprise.” 1 Illinois Tax Service §13.10(3) (1994).  Separate accounting does not take into account the income that results from the interaction among the parts of the business in different states. That is to say, it ignores the income arising from functional integration, centralization of management and economies of scale. 1 Illinois Tax Service §13.10(3) (1994); 
Citizens Utilities
, 111 Ill. 2d at 39, 488 N.E.2d at 986.  Thus, most states use formula apportionment for determining the taxable income of multistate businesses. 1 Illinois Tax Service §13.10(3) (1994).

The primary type of formula apportionment employed by Illinois is three-factor apportionment.  This method involves calculating three fractions: (1) Illinois property over all property of the business; (2) Illinois payroll over all payroll; and (3) Illinois sales over all sales.  The three fractions are then averaged, with the sales fraction receiving a double weight.  The resulting fraction is multiplied by the business’ total income in order to determine the amount of income taxable in Illinois.  Although Illinois generally uses three-factor formula apportionment, if a taxpayer can show that this method would unfairly distort the amount of taxable income properly apportioned to Illinois, the Department may (and may be constitutionally required to) allow the taxpayer to use another method to calculate taxable income, such as separate accounting. See 
Miami Corp. v. Department of Revenue
, 212 Ill. App. 3d 702, 571 N.E.2d 800 (1991).  

Finally, the amount of a business’ income taxable within a state may be determined through combined reporting or separate reporting.  Separate reporting treats each legally distinct corporate entity’s income separately for tax purposes.  Combined reporting looks beyond corporate forms and taxes a business enterprise as a whole.  The various entities deemed to constitute a single business enterprise are put into a “unitary business group,” which is treated as a single taxpayer.  
Citizens Utilities
, 111 Ill. 2d at 40-41, 488 N.E.2d at 987.  Combined reporting is favored since it is much less subject to manipulation by taxpayers than is separate reporting. 
Citizens Utilities
, 111 Ill. 2d at 39, 488 N.E.2d at 986.

In this case, the Department determined that ADP and its subsidiaries constituted a single unitary business group subject to three-factor apportionment.  ADP has three arguments why this is not the proper result.  First, it maintains that the income from the subsidiaries is nonbusiness income.  Second, it argues that use of three-factor apportionment unfairly distorts the proportional amount of income taxable in Illinois, and thus it should be permitted to calculate its taxes with an alternative method.  Third, it argues that the subsidiaries must be grouped together in a different unitary business group than ADP’s, and that this unitary business group is subject to a different apportionment formula.  The essential consequence of these three arguments is the same: the income of the subsidiaries will not be taxed in Illinois.  We will examine each of these arguments in turn.

I

If it is determined that the income of ADP’s subsidiaries is  not business income, then it will be allocated to a particular state--probably Delaware, since the subsidiaries are Delaware corporations.  As a result, the income would not be taxable in Illinois.

  The Illinois Income Tax Act (the Income Tax Act) defines “business income” as follows: 

“income arising from transactions and activity in the regular course of the taxpayer’s trade or business, net of the deductions allocable thereto, and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer’s regular trade or business operations.” 35 ILCS 5/1501(a)(1) (West 1998).

According to the Department’s regulations, income is presumed to be business income unless it is clearly classifiable as nonbusiness income.  86 Ill. Adm. Code §100.3050(a) (West 1991).  Courts have interpreted the statute as setting out two tests for determining whether income is business income, namely, the “transactional test” and the “functional test.”  
National Realty
, 144 Ill. App. 3d at 554, 494 N.E.2d at 933.  Income is properly classified as business income if either test is met.  
Borden, Inc. v. Department of Revenue
, 295 Ill. App. 3d 1001, 1010, 692 N.E.2d 1335, 1341 (1998).  The taxpayer has the burden to show that a disputed gain is not business income. 
National Realty
, 144 Ill. App. 3d at 553, 494 N.E.2d at 932.

The transactional test is whether the income in question arises from transactions and activities in which the taxpayer regularly engages.  
Borden
, 295 Ill. App. 3d at 1010, 692 N.E.2d at 1341.  The ALJ found that the transactional test was satisfied because the income of the subsidiaries was earned as a direct result of transactions and operations in which ADP regularly engaged.  ADP's treasury department regularly invested in marketable securities both before and after the subsidiaries were formed.  The ALJ found that ADP maintained substantial control over the investments made by the subsidiaries.  Furthermore, ADP still held a substantial number of securities in its own name.  These findings of fact are considered 
prima
 
facie
 true (735 ILCS 5/3-110 (West 1996)), and ADP has not done anything to refute them.  Given these facts, the Department was correct that the transactional test was satisfied.

The functional test is whether the income comes from the acquisition, management and disposition of property used in the taxpayer’s regular trade or business. 
National Realty
, 144 Ill. App. 3d at 554, 494 N.E.2d at 932.  ADP uses marketable securities in the regular course of its business and, accordingly, the ALJ found that the functional test had been satisfied.  Once again, we do not think that the ALJ erred in this determination.

II

Under the due process clause (U.S. Const., amend. XIV), and the commerce clause (U.S. Const., art. I, §8), for a state constitutionally to tax a multijurisdictional business, there must be a connection between the state and the income-producing activities that generate the income the state seeks to tax.  
Allied-Signal, Inc. v. Director, Division of Taxation
, 504 U.S. 768, 778, 119 L. Ed. 2d 533, 546, 112 S. Ct. 2251, 2258 (1992).  Thus, if a particular method of apportionment clearly leads to taxation of income from out-of-state activities, its application may violate the United States Constitution. 
Allied-Signal
, 504 U.S. at 777, 119 L. Ed. 2d at 545, 112 S. Ct. at 2258.  Accordingly, the Income Tax Act provides that if three-factor apportionment does

“not fairly represent the extent of a person’s business activity in this State, the person may petition for, or the Director may require, in respect of all or any part of the person’s business activity, if reasonable:

(1) Separate accounting;

(2) The exclusion of any one or more factors;

(3) The inclusion of one or more additional factors which will fairly represent the person’s business activities in this State; or

(4) The employment of any other method to effectuate an equitable allocation and apportionment of the person’s business income.” 35 ILCS 5/304(f) (West 1996).

ADP presented expert testimony that three-factor apportionment unfairly distorted the degree of its business activity in Illinois.  Thus, ADP argues, it should be allowed to apportion the income using a different formula.  It suggests the formula set out in 
American Home Products Corp. v. Limbach
, 49 Ohio St. 3d 158, 551 N.E.2d 201 (
per
 
curiam
) 
cert.
 
denied
, 498 U.S. 818, 112 L. Ed. 2d 37, 111 S. Ct. 63 (1990).

However, even taking all the assumptions of ADP’s expert as correct, the income apportionable to Illinois under the three-

factor formula is only about 8% higher than under ADP’s proposed method of accounting.  In our view, this increase does not constitute "the type of gross distortion which would justify the application of an alternative apportionment formula.”  
Lakehead Pipe Line Co. v. Department of Revenue
, 192 Ill. App. 3d 756, 764, 549 N.E.2d 598, 603 (1989).  Moreover, the ALJ found that the income produced by the subsidiaries was used by ADP in its regular course of business.  ADP, unlike its subsidiaries, engages in much income-producing activity in this state.  In our view, it was not unfair for the  Department to apportion some of that income to Illinois with the three-factor formula.

III

Next, ADP contends that its subsidiaries must be placed in a unitary business group separate from the parent.  The Income Tax Act defines a "unitary business group" as follows:

"[A] group of persons related through common ownership whose business activities are integrated with, dependent upon and contribute to each other. *** Common ownership in the case of corporations is the direct or indirect control or ownership of more that 50% of the outstanding voting stock of the persons carrying on unitary business activity.  Unitary business activity can ordinarily be illustrated where the activities of the members are: (1) in the same general line (such as manufacturing, wholesaling, retailing of tangible personal property, insurance, transportation or finance); or (2) are steps in a vertically structured enterprise or process (such as the steps involved in the production of natural resources, which might include exploration, mining, refining and marketing); and, in either instance, the members are functionally integrated through the exercise of strong centralized management (where, for example, authority over such matters as purchasing, financing, tax compliance, product line, personnel, marketing and capital investment is not left to each member)." 35 ILCS 5/1501(a)(27) (West 1998)

Whether the corporate entities constitute a unitary business group under this standard is ordinarily a question of fact.  
Citizens Utilities
, 111 Ill. 2d at 47, 488 N.E.2d at 990.  We agree with the Department that ADP and its subsidiaries would make up a unitary business group under this general definition. The ALJ found that ADP largely directed the investments of the subsidiaries.  The managers of the subsidiaries largely were officers and directors of ADP.  Furthermore, investing is a part of ADP's general line of business, since one of its major sources of income was investing the "float" when it held funds for taxes or payroll.  

However, the inquiry does not end there.  The Income Tax Act provides that certain types of business entities must be placed in their own separate unitary business group, notwithstanding the above definition.

"In no event, however, will any unitary business group include members which are ordinarily required to apportion business income under different subsections of Section 304 ***. If a unitary business group would, but for the preceding sentence, include members that are ordinarily required to apportion business income under different subsections of Section 304, then for each subsection of Section 304 for which there are two or more members, there shall be a separate unitary business group composed of such members."  35 ILCS 5/1501(a)(27) (West 1998).

Section 304(c) of the Income Tax Act mandates that "financial organizations" use a formula different from ordinary three-factor apportionment.  This formula multiplies the organizations' income by a fraction, the numerator of which is the business income from within the state and the denominator of which is business income from all sources. 35 ILCS 5/304(c) (West 1998).  The business income from within Illinois consists of:

"(A) Fees, commissions or other compensation for financial services rendered within this State;

(B) Gross profits from trading in stocks, bonds or other securities managed within this State;

(C) Dividends, and interest from Illinois customers, which are received within this State;

(D) Interest charged to customers at places of business maintained within this State for carrying debit balances of margin accounts, without deduction of any costs incurred in carrying such accounts; and

(E) Any other gross income resulting from the operation as a financial organization within this State." 35 ILCS 5/304(c) (West 1998).

ADP claims that its subsidiaries are financial organizations within the meaning of the Income Tax Act and, therefore, that they must be put in their own unitary business group separate from the parent company and have their income apportioned using the section 304(c) formula.  If ADP is correct, virtually none of the subsidiaries’ income will be apportioned to Illinois, for they do not conduct their operations in this state.

ADP claims that the subsidiaries qualify as financial organizations under the Income Tax Act because they are investment companies. The Act defines "financial organization" as: 

"any bank, bank holding company, trust company, savings bank, industrial bank, land bank, safe deposit company, private banker, savings and loan association, building and loan association, credit union, currency exchange, cooperative bank, small loan company, sales finance company, 
investment
 
company
, or any person which is owned by a bank or bank holding company." (Emphasis added.) 35 ILCS 5/1501(a)(8) (West 1998).

The Income Tax Act, however, does not go on to define any of the organizations enumerated within this definition. 

We view the question of whether ADP's subsidiaries qualify as investment companies for the purposes of the Income Tax Act as a mixed question of law and fact.  Accordingly, we review under a "clearly erroneous" standard.  
City of Belvidere v. Illinois
 
State Labor Relations Board
, 181 Ill. 2d 191, 205, 692 N.E.2d 295, 302 (1998).  Even were we to consider the question a purely legal one, as ADP suggests, and apply a 
de
 
novo
 standard, the Department's interpretation would still be entitled to some deference.  "It is generally recognized that courts will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of that statute."  
Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n
, 95 Ill. 2d 142, 152, 447 N.E.2d 295, 300 (1983).

In the absence of a definition, the term "investment company" should be accorded its ordinarily understood meaning.  
Scadron v. City of Des Plaines
, 153 Ill. 2d 164, 185, 606 N.E.2d 1154, 1163 (1992).  The parties, of course, differ as to what the commonly understood meaning of the term is. According to the Department, "investment company" is widely understood to be a term of art that is statutorily defined.  The Department argues that the common denominator of all the types of institution listed as financial organizations is government regulation.  The reason that the institutions listed as financial organizations are not defined in the Income Tax Act, the Department argues, is that they all are defined and regulated by other statutes.  In particular, the Department contends that the legislature intended to draw on the definition of "investment company" in the federal Investment Company Act of 1940 (15 U.S.C. §80a-1 
et
 
seq.
 (1988)).  Section 80a-3(a) of the Investment Company Act gives a general definition of "investment company," which ADP's subsidiaries would seem to fit.  Subsections (b) and (c), however, contain numerous exceptions.  ADP's subsidiaries clearly fall into one or more of the exceptions. 15 U.S.C. §80a-3 (1988). The Investment Company Act, moreover, requires that corporations that qualify as investment companies comply with certain regulations, including registering with the Securities and Exchange Commission (SEC). 15 U.S.C. §80a-7 (1984).  The subsidiaries have not registered with the SEC or otherwise attempted to comply with the mandates of the Investment Company Act.  Therefore, as both parties acknowledge, the subsidiaries would not qualify as investment companies under the Investment Company Act.

In a separate part of the Income Tax Act, "regulated investment company" is defined with reference to section 851 of the Internal Revenue Code, which provides in part:

"(a) General rule

For purposes of this subtitle, the term 'regulated investment company' means any domestic corporation

(1) which, at all times during the taxable year

(A) is registered under the Investment Company Act of 1940, as amended [citation] as a management company or unit investment trust, or

(B) has in effect an election under such Act to be treated as a business development company, or

(2) which is a common trust fund or similar fund excluded by section 3(c)(3) of such Act [citation] from the definition of 'investment company' and is not included in the definition of 'common trust fund' by section 584(a) [of the Internal Revenue Code].

(b) Limitations 

A corporation shall not be considered a regulated investment company for any taxable year unless

(1) it files with its return for the taxable year an election to be a regulated investment company or has made such election for a previous taxable year[.]" 26 U.S.C. §851 (1994).

ADP's subsidiaries would not qualify as "regulated investment companies" under this definition.  In response, ADP points out that the section of the Income Tax Act in dispute in this case talks of "investment companies," not "regulated investment companies."

ADP points to the Black's Law Dictionary (Black's) definition to support its interpretation of "investment company":

"Any issuer which: (1) is or holds itself out as being engaged primarily, or proposes to engage primarily, in the business of investing, reinvesting, or trading in securities; (2) is engaged or proposes to engage in the business of issuing face-amount certificates of the installment type, or has been engaged in such business and has any such certificates outstanding; or (3) is engaged or proposes to engage in the business of investing, reinvesting, owning, holding, or trading in securities, and owns or proposes to acquire investment securities having a value exceeding 40 percentum of the value of such issuer's total assets (exclusive of Government securities and cash items) on an unconsolidated basis.  Investment Company Act, §3."  Black's Law Dictionary 826 (6th ed. 1990).

ADP's subsidiaries would qualify as investment companies under this definition.  In fact, this is almost word for word the general definition of "investment company" from section 80a-3(a) of the Investment Company Act.  Black's definition, however, contains a second paragraph:

"A company or trust which uses its capital to invest in other companies.  The most common kind of investment company is the mutual fund.  An investment company differs from a holding company in that the latter seeks control of the ventures in which it invests while an investment company seeks the investment for its own sake and normally diversifies its investments.  There are two principal types: the closed-end and the open-end, or mutual fund.  Shares in closed-end investment companies are readily transferable in the open market and are bought and sold like other shares.  Capitalization of these companies remains the same unless action is taken to change.  Open-end funds sell their own new shares to investors, stand ready to buy back their old shares, and are not listed.  Open-end funds are so called because their capitalization is not fixed; they issue more shares as demanded. 
See
 
also
 Mutual fund." Black's Law Dictionary 826 (6th ed. 1990).

The Department points out that the legislature could not have specifically had the Black's definition in mind when passing the disputed portion of the Income Tax Act, because Black's did not contain a definition of "investment company" at the time.  In our view, however, even were we to adopt Black's definition as the relevant one, the definition does not unequivocally support ADP's interpretation.  Even though ADP's subsidiaries qualify under the general definition of "investment company" in the first paragraph, the fact that this definition is taken right from the Investment Company Act, it could be argued, shows that "investment company" is commonly understood as a statutorily defined term of art.  Granted, Black's definition does not include the exceptions in the Investment Company Act, but it does refer readers to that act.  We also note that ADP is neither of the two principal types of investment company listed in the second paragraph of Black's definition. 

There are reasonable arguments in favor of the interpretation advocated by each party.  In the presence of this ambiguity, we defer to the Department's reading.  It is extremely common for corporations to invest capital in other companies.  But if every company that did so qualified as an investment company for the purposes of the Income Tax Act, three-factor apportionment would be the exception rather than the rule.  We do not think that this would comport with legislative intent.

Moreover, in our view, a narrow reading of the financial organization exception to three-factor apportionment is more compatible with the spirit behind combined reporting.  The subsidiaries in this case were more akin to ADP's treasury department than to organizations that provide investment services to the public.  In our view, functionally integrated companies are best combined in one group when feasible.  Combined reporting is preferable for "[i]f corporate forms were respected, State income taxation would be as artificially limited and open to manipulation as is the method of separate accounting."  
Citizens Utilities
, 111 Ill. 2d at 40, 488 N.E.2d at 987. 

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

McBRIDE AND McNULTY, JJ., concur.