LEILA SHAKKOUR et al., Plaintiffs-Appellees, v. BRIAN A. HAMER, as Director of the Department of Revenue, et al., Defendants-Appellants.

First District (5th Division)    No. 1—04—1646

Opinion filed November 9, 2006.

Lisa Madigan, Attorney General, of Chicago (Gary Feinerman, Solicitor General, and Brian F. Barov, Assistant Attorney General, of counsel), for appellants.

Horwood Marcus & Berk, Chtrd., of Chicago (Fred O. Marcus, C. Eric Fader, and Jennifer A. Jors, of counsel), for appellees.

JUSTICE GALLAGHER delivered the opinion of the court:

Appellants Brian A. Hamer, as Director of the Illinois Department of Revenue,[1] the Illinois Department of Revenue and Judy Baar Topinka, as Treasurer of the State of Illinois (hereinafter, collectively, the Department) appeal the trial court's granting of summary judgment in favor of plaintiffs-taxpayers Leila Shakkour and Michael Thorne.[2] The Department contends that the trial court erred in granting summary judgment in favor of Shakkour because Shakkour failed to establish that the income she received as a distribution from a partnership where she was a partner was nonbusiness income. The income distributed to Shakkour related to the partnership's sale of an intangible asset that was made in conjunction with the partnership's cessation of business operations. The Department contends that the sale of the intangible asset was not a marked departure from the partnership's prior license of that same asset. Thus, the Department contends that the sale proceeds associated with the sale of the intangible asset should be classified as business income, which then required Shakkour to report her distributive share of the sale proceeds on her Illinois income tax return. For the reasons that follow, we affirm.

---

[1] As a matter of law, Brian A. Hamer, the current Director of the Illinois Department of Revenue, has been substituted as a party in place of Glen L. Bower, the originally named defendant and Hamer's predecessor. 735 ILCS 5/2—1008(d) (West 2002).

[2] Michael Thorne is included as a party on appeal because Thorne and Shakkour filed joint tax returns for the tax years at issue. The income giving rise to this appeal, however, relates to Shakkour's distributive share of partnership income.

Shakkour was a nonresident of Illinois for tax years 1994, 1995 and 1996. During this time, Shakkour was a general partner of O'Connor Partners, which was an Illinois partnership with its principal place of business in Illinois. O'Connor Partners was owned in part by the partners of O'Connor & Associates. O'Connor & Associates was an Illinois partnership engaging in the business of trading in debt and equity securities, options, currency, commodity and option futures and derivatives.

O'Connor & Associates developed intellectual property known as the "Trading Technology," which was a specialized computer software program consisting of databases and processes to be used in trading various financial products. Since O'Connor & Associates lacked the resources and marketing experience to properly market the Trading Technology, it partnered with Swiss Bank to provide these services.

On January 25, 1990, O'Connor & Associates' partners formed O'Connor Partners. The next day on January 26, 1990, O'Connor Partners and Swiss Bank organized a limited partnership known as SBC/OC Services, L.P. O'Connor Partners owned 20% of the limited partnership and was its general partner. Swiss Bank owned the remaining 80% interest and was a limited partner. On December 27, 1990, O'Connor & Associates contributed the Trading Technology to O'Connor Partners as a contribution of capital to the partnership. O'Connor Partners then licensed the Trading Technology to SBC/OC Services. O'Connor Partners reported its income associated with the Trading Technology as license income for tax purposes.

In December 1991, Swiss Bank decided to integrate O'Connor Partners into the capital markets and treasury operation division within the bank. As part of the integration, the former members of O'Connor Partners would become bank employees and Swiss Bank would have ultimate control over use of the Trading Technology.

On September 30, 1992, O'Connor Partners sold its general partnership interest in SBC/OC Services and the Trading Technology to Swiss Bank, each sold separately with a different sales price. Swiss Bank paid for the general partnership interest on or about September 30, 1992, and recognized the gain realized from the sale on O'Connor Partners' 1992 income tax return.

The Trading Technology was sold for a combination of fixed and contingent payments based on the profitability of Swiss Bank's worldwide capital markets and treasury group, which took over use of the Trading Technology from O'Connor Partners. The fixed payments were paid over a four-year period from September 30, 1992, through September 30, 1995, with each payment bearing interest from the September 30, 1992, sale date. The contingent payments were due on

March 31 of each calendar year, and Swiss Bank made payments on March 31, 1993, and March 31, 1994, but did not make a payment on March 31, 1995, because the capital markets group's profitability was lower than projected.

In July 1995, the parties modified the sales agreement, which now required Swiss Bank to make fixed cash and stock payments to O'Connor Partners in 1995, 1996, 1997 and 1998 bearing interest from July 25, 1995. O'Connor Partners then distributed these payments upon receipt to its partners.

Shakkour did not report her distributive share of O'Connor Partners' income received from the sale of the Trading Technology as business income on her Illinois income tax return. Instead, Shakkour reported the income on her New York and Connecticut income tax returns, which were the states where she resided during those tax years. Shakkour reported zero Illinois net income in 1994 and 1996 and $352,000 in Illinois net income in 1995.

The Department issued a notice of deficiency against Shakkour relating to her share of O'Connor Partners' income for tax years 1994 through 1996. The Department determined Shakkour's share of the partnership income for Illinois income tax purposes to be as follows: $9,284,314 for the 1994 tax year; $10,548,092 for the 1995 tax year; and $448,020 for the 1996 tax year. Accordingly, the Department assessed an additional $597,852 in taxes and $180,750 in interest.

Shakkour paid the deficiency under protest and filed a five-count verified complaint under section 2a of the State Officers and Employees Money Disposition Act. 30 ILCS 230/2a (West 2002). Count I sought a statutory injunction. Counts II and III alleged that Shakkour's distributive share of O'Connor Partners' capital gain, interest and dividend income realized from the Trading Technology sale was not Illinois business income because the proceeds were derived from the sale of "substantially all" of O'Connor Partners' assets and the proceeds were distributed to the partners rather than reinvested in the partnership's business. Count IV alleged that if the income realized from the sale of the Trading Technology was business income, the income did not qualify as income derived from "sales" within Illinois and, thus, could not be apportioned to Illinois. Count V alleged that taxing the income realized from the sale of the Trading Technology violated federal and state due process protections because the sale was a capital transaction involving intangible property that served an investment function.

On July 27, 2002, Shakkour filed a motion for partial summary judgment arguing that her distributive share of the income realized from the Trading Technology sale was not business income allocatable

to her and, alternatively, that if it was business income, taxing it was unconstitutional. The Department responded that Shakkour failed to show by competent books and records that the sale of the Trading Technology resulted in a cessation of O'Connor Partners' business activities and, thus, disputed material facts remained rendering summary judgment improper.

The Department also moved for summary judgment on June 5, 2003, claiming that the sale of the Trading Technology was an integral part of O'Connor Partners' regular business operations and, thus, the Trading Technology's sale generated business income. The Department argued that the sale of the Trading Technology was not an extraordinary event, but an integral part of O'Connor Partners' regular business operations because the sale and licensed use of the Trading Technology generated income to O'Connor Partners.

The trial court on March 24, 2004, issued a memorandum judgment and order granting Shakkour's motion for summary judgment and denying the Department's motion for summary judgment. The trial court found that the sale of the Trading Technology was an extraordinary event marking the cessation of O'Connor Partners' business activities and noted that O'Connor Partners distributed the sale proceeds to its partners. Thus, the trial court found that the sale fell within the business liquidation exception to the functional test used to classify income as business income. The trial court also found that the business liquidation exception to the functional test only required a showing of the distribution of proceeds from the asset's sale to the shareholders and the ceasing of Illinois business operations. The trial court further held that Shakkour's distributive share of the partnership income realized from the sale of the Trading Technology was not allocable to Illinois. Thus, the trial court ordered distribution of the $778,602 held in the protest fund plus interest to Shakkour. The Department filed a motion for reconsideration, which the trial court denied on May 4, 2004. The Department timely appealed.

We review the trial court's granting of summary judgment de novo. Arangold Corp. v. Zehnder, 204 Ill. 2d 142, 146, 787 N.E.2d 786, 789 (2003). Summary judgment is properly granted "where the pleadings, depositions, affidavits, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Mabie v. Village of Schaumburg, 364 Ill. App. 3d 756, 758, 847 N.E.3d 796, 788 (2006).

■ The issue on appeal is whether a material fact exists regarding the classification of the sale proceeds resulting from the sale of the

Trading Technology along with the related interest and dividend income as nonbusiness income thereby rendering the granting of summary judgment improper. As a preliminary matter, we consider it necessary to state that income in Illinois can be classified as either business income or nonbusiness income. The Illinois Income Tax Act defined business income as "income arising from transactions and activity in the regular course of the taxpayer's trade or business ***, and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations."[3] 35 ILCS 5/1501(a)(1) (West 2000). Nonbusiness income is all other income. 35 ILCS 5/1501(a)(13) (West 2000). Historically, the transactional test and the functional test were used to classify income as either business or nonbusiness income. The transactional test "classifies income as business income if the gain is ' "attributable to a type of business transaction in which [the] taxpayer regularly engages." ' " *American States Insurance Co. v. Hamer*, 352 Ill. App. 3d 521, 526, 816 N.E.2d 659, 663 (2004), quoting *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 269, 695 N.E.2d 481, 484 (1998), quoting *National Realty & Investment Co. v. Department of Revenue*, 144 Ill. App. 3d 541, 554 (1986). Under the functional test, business income includes " ' "income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations." ' " *American States Insurance Co.*, 352 Ill. App. 3d at 527, 816 N.E.2d at 664, quoting *Texaco-Cities*, 182 Ill. 2d at 267, 695 N.E.2d at 484, quoting 35 ILCS 5/1501(a)(1) (West 1994). Income characterized as business income will be sourced to Illinois and subject to Illinois tax whereas nonbusiness income will be sourced to the taxpayer's state of domicile. The taxpayer bears the burden of establishing that income is nonbusiness income. *Texaco-Cities*, 182 Ill. 2d at 268, 695 N.E.2d at 484.

In this appeal, the Department contends that Shakkour's distributive share of the proceeds from the sale of the Trading Technology should be classified as business income allocable to Illinois because the Trading Technology was an integral part of O'Connor Partners'

---

[3]The legislature modified the definition of the term "business income" effective July 30, 2004. Business income is currently defined in the Illinois Income Tax Act as "all income that may be treated as apportionable business income under the Constitution of the United States." 35 ILCS 5/1501(a)(1) (West 2004). The parties on appeal agree that this statutory amendment applies prospectively.

regular business operations and, thus, generated business income when it was sold. The Department contends that under the functional test, the use of a capital asset in the taxpayer's regular trade or business indisputably renders that asset an integral part of the taxpayer's regular business operations and income derived from the acquisition, management and disposition of such a business asset is business income. See *Texaco-Cities*, 182 Ill. 2d at 272, 695 N.E.2d at 486.

The Department acknowledges the business liquidation exception to the functional test set forth in *Blessing/White, Inc. v. Zehnder*, 329 Ill. App. 3d 714, 724-25, 768 N.E.2d 332, 341-42 (2002). In *Blessing/White*, this court held that income generated from the disposition of assets, which were essential to regular business operations, in an extraordinary, one-time corporate event marking the cessation of business activities with distribution of the sale proceeds to shareholders should be classified as nonbusiness income. *Blessing/White*, 329 Ill. App. 3d at 728, 768 N.E.2d at 343. The Department claims that the taxpayer, under this business liquidation exception test, must demonstrate that the disposition of the business asset was not an integral part of its "regular trade or operations." See *Blessing/White*, 329 Ill. App. 3d at 726, 768 N.E.2d at 341-42; *American States Insurance Co.*, 352 Ill. App. 3d at 531, 816 N.E.2d at 667. The Department contends that Shakkour failed to meet this burden because the change in form of O'Connor Partners' revenue from license revenue to gross proceeds from the sale of the Trading Technology was not a marked departure from O'Connor Partners' regular business operations, and, thus, the sale of the Trading Technology was a continuation of O'Connor Partners' regular business operations and not an extraordinary transaction. The Department claims that the license and sale of the Trading Technology were alternative means of generating revenue associated with its business of disposing of the Trading Technology. The Department maintains that the sale of the Trading Technology was an integral part of O'Connor Partners' regular business operations and qualifies as business income under the *Blessing/White* test.

In response, Shakkour contends that no genuine issue of material fact exists that the gain from the sale of the Trading Technology constituted nonbusiness income. Shakkour maintains the modified functional test applies when the disposition of assets was made pursuant to a corporate liquidation that results in the cessation of business. *Blessing/White*, 329 Ill. App. 3d at 724, 768 N.E.2d at 340. Specifically, Shakkour contends that the functional test is not satisfied if: (1) the sale constitutes a cessation of the company's business activities and (2) the sale proceeds are distributed to the owners, rather than used to acquire business assets or generate income for use in future busi-

ness operations. *Blessing/White, Inc.*, 329 Ill. App. 3d at 721, 768 N.E.2d at 338; see *Texaco-Cities*, 182 Ill. 2d at 272-74, 695 N.E.2d at 486-87. Shakkour claims that the facts in the instant case are identical to those in *Blessing/White* because O'Connor Partners: (1) sold all of its business assets, which constituted intangible personal property, to a third party; (2) the taxpayer ceased its business activities; and (3) the taxpayer disbursed its sale proceeds to its shareholders. Shakkour also contends that the *Texaco-Cities Services Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 695 N.E.2d 481 (1998), and *Kroger Co. v. Department of Revenue*, 284 Ill. App. 3d 473, 673 N.E.2d 710 (1996), cases relied upon by the Department are distinguishable because the taxpayer in those cases did not sell a separate and distinct aspect of its business ceasing business operations and then distribute the sale proceeds to its shareholders. Shakkour maintains that O'Connor Partners' sale was a cessation and not a continuation of its business activities because after selling all of its noncash assets to Swiss Bank, O'Connor Partners did not engage in business activities.

We agree with Shakkour's contentions on appeal. Initially, we note that this court in *Blessing/White* acknowledged the Illinois Supreme Court's decision in *Texaco-Cities*, which held that " 'the sale of property will constitute business income *if the property and sale are essential* [*i.e.*, integral] to the taxpayer's business operations.' " (Emphasis in original.) *Blessing/White*, 329 Ill. App. 3d at 721, 768 N.E.2d at 338, quoting *Texaco-Cities*, 182 Ill. 2d at 271, 695 N.E.2d at 485. The *Blessing/White* analysis focused on the modified form of the functional test as set forth in *Texaco-Cities* and its application when assets are disposed of pursuant to a corporate liquidation in cessation of business activities. *Blessing/White*, 329 Ill. App. 3d at 724-26, 768 N.E.2d at 340-41, relying on *Laurel Pipe Line Co. v. Commonwealth*, 537 Pa. 205, 642 A.2d 472 (1994). In *Blessing/White*, this court interpreted *Texaco-Cities* to hold that "the functional test will be met in [corporate liquidation] cases only where the property *and* the liquidation of assets (*i.e.*, disposition) are essential to the taxpayer's regular trade or operations." (Emphasis in original.) *Blessing/White*, 329 Ill. App. 3d at 726, 768 N.E.2d at 341. We agree with Shakkour that the instant case falls within the scope of this court's opinion in *Blessing/White* and find *Blessing/White* dispositive of this issue on appeal.

Here, the record demonstrates that O'Connor Partners earned licensing income from its license of the Trading Technology in O'Connor Partners' regular business operations and reported the associated income on its tax return, which is consistent with the facts in *Blessing/White*. Also similar to *Blessing/White*, O'Connor Partners

disposed of the underlying asset that generated the licensing income. In both *Blessing/White* and in the instant case, the disposition of the asset marked the cessation of business operations and the proceeds from the liquidation were not reinvested into operations but, rather, were distributed to shareholders. This court in *Blessing/White* considered the disposition to be an extraordinary, one-time corporate event causing the cessation of business activities conducted in Illinois and we likewise conclude as such in the instant case.

We also find persuasive this court's decision in *American States Insurance Co. v. Hamer*, 352 Ill. App. 3d 521, 816 N.E.2d 659 (2004). In *American States*, this court interpreted *Texaco-Cities* to stand for the proposition that absent "evidence that the sale was a cessation of a separate and distinct portion of Texaco-Cities' business," the gain was properly classified as business income. *American States Insurance Co.*, 352 Ill. App. 3d at 531, 816 N.E.2d at 667. Adopting that rationale, the *American States* court concluded that because a complete liquidation and cessation of a business occurred, the resulting gain in *American States* was properly classified as nonbusiness income. *American States Insurance Co.*, 352 Ill. App. 3d at 532, 816 N.E.2d at 667-68. Similarly, here, the sale of the Trading Technology was in conjunction with the liquidation and cessation of O'Connor Partners' business operations. Based on the established precedent, we cannot conclude that the sale proceeds from O'Connor Partners' sale of the Trading Technology and the distribution of the sale proceeds to shareholders followed by the cessation of business operations should be classified as business income.

We considered but must reject the Department's contention that the sale of the Trading Technology was equivalent to its prior license of the Trading Technology. The Department maintains that the sale proceeds should be classified as business income because O'Connor Partners could not use the Trading Technology itself but generated revenue from other entities' use of the asset first by licensing it and then by selling the asset. The Department maintains that under both circumstances, the proceeds relate to the disposition of the Trading Technology and, thus, the income should be classified as business income in both instances. We, however, do not consider the sale of an asset to be synonymous with the license of the asset. The plain, ordinary meaning of the term "sale" is "[a] contract between two parties, called, respectively, the 'seller' (or vendor) and the 'buyer' (or purchaser), by which the former, in consideration of the payment or promise of payment of a certain price in money, transfers to the latter

*the title and the possession* of property."[4] (Emphasis added.) Black's Law Dictionary 1337 (6th ed. 1990). The phrase "dispose of" means in part "[t]o exercise finally, in any manner, one's power of control over; to pass into the control of someone else; to alienate, relinquish, part with; *** to bargain away. Often used in restricted sense of 'sale' only, or so restricted by context." Black's Law Dictionary 471 (6th ed. 1990). A license, however, is merely a party's authorized use of property that still legally belongs to the owner. *Estate of Presley v. Russen*, 513 F. Supp. 1339, 1350-51 (D.N.J. 1981); see *Nestle Holdings, Inc. v. Commissioner of Internal Revenue*, 152 F.3d 83, 88 (2d Cir. 1998).

■ We, thus, disagree with the Department's contention that the sale of the Trading Technology was not a marked departure from its previous license of that same asset. Upon the sale of the Trading Technology, O'Connor Partners was divested of any ownership rights to the Trading Technology whereas O'Connor Partners still owned the Trading Technology when it licensed its use to another entity and earned a licensing fee for its authorized use. The Department acknowledges that the sale of the Trading Technology could be made only once, but maintains that the sale was not a marked departure of O'Connor Partners' licensing of the Trading Technology. We believe the Department's contention ignores application of the business liquidation exception to the functional test. A critical factor in applying the business liquidation exception is recognition that the entity ceases operations and distributes the sale proceeds to its shareholders. The Department's position disregards the importance of recognizing that the sale proceeds in the instant case are not reinvested in the ongoing business of the entity, but are distributed to shareholders as part of the liquidation. Thus, we conclude that the sale was an extraordinary event that was a marked departure from its previous business of licensing the Trading Technology. Accordingly, we do not believe that a genuine issue of material fact exists that the income in dispute should be classified as nonbusiness income.

Since we conclude that the sale proceeds from O'Connor Partners' sale of the Trading Technology should not be classified as business income, we must now address the proper classification of O'Connor Partners' distribution of the sale proceeds to its shareholder, Shak-

---

[4]We note that for sales tax and use tax purposes, the term "sales at retail" is defined as " 'any transfer of the ownership of or title to tangible personal property to a purchaser, for the purpose of use, and not for the purpose of resale ***, for a valuable consideration.' " *American River Transportation Co. v. Bower*, 351 Ill. App. 3d 208, 210, 813 N.E.2d 1090, 1092 (2004), quoting 35 ILCS 105/2 (West 2000).

kour. The parties do not dispute that Shakkour was not a resident of Illinois for tax years 1994, 1995 and 1996. A nonresident partner's share of a partnership's business income is sourced and subject to tax in Illinois whereas the partner's share of nonbusiness income is allocated to the nonresident partner in her individual capacity as if the income had been paid to the nonresident partner directly. 35 ILCS 5/305(b) (West 2002). As such, Shakkour would only be subject to Illinois tax on business income sourced to Illinois. 35 ILCS 5/301(c) (West 2002). Because the income at issue is nonbusiness income and Shakkour is a nonresident of Illinois, the income resulting from her share of the Trading Technology sale should not be allocated to Illinois.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

O'BRIEN, P.J., and O'MARA FROSSARD, J., concur.