313 P.3d 548

FIRST DATA CORPORATION; 440 Insurance Agency of Massachusetts, Inc.; 440 Insurance Agency, Inc.; Actuarial Computer Technology, Inc.; American Rapid Corporation; Applied Mailing Systems, Inc.; Atlantic Bankcard Properties Corporation; Atlantic States Bankcard, Inc.; B1 Pt Services, Inc.; Bankcard Investigative Group, Inc.; Basin Finance Company; Business Office Services, Inc.; Callteleservices, Inc.; Cashtax, Inc.; Cesi Holdings, Inc.; Credit Performance, Inc.; Dabco Computer Services, Inc.; DM Holdings, Inc.; Donnelley Funding, Inc.; Donnelley Marketing Consumer Promotions, Inc.; Donnelley Marketing Holdings, Inc.; Donnelley Marketing, Inc.; Eastern States Monetary Services, Inc.; EBP Life Insurance Company; FDC International, Inc.; FDC International Partner, Inc.; FDMS/UMS Partner, Inc.; FDR Interactive Technologies Corporation; FDR Ireland Limited; FDR Limited; FDR Missouri, Inc.; FDR Signet, Inc.; FDWYCO, Inc.; First Data Capital, Inc.; First Data Communications Corporation; First Data Digital Certificates, Inc.; First Data Distributors, Inc.; First Data Information Management Group, Inc.; First Data Integrated Services, Inc.; First Data Investor Services Group, Inc.; First Data Latin America Inc.; First Data Merchant Services Corporation; First Data Pittsburg Alliance Partner, Inc.; First Data Pos, Inc.; First Data Resources Canada, Inc.; First Data Resources, Inc.; First Data Services, Inc.; First Data Technologies, Inc.; First Data Tennessee, Inc.; First Financial Bank; First Financial Management Corporation; FSM Services, Inc.; Hogan Information Services Company; Innovis Data Solutions, Inc.; Integrated Payment Systems, Inc.; International Banking Technologies, Inc.; IPS Card Solutions, Inc.; IPS Holdings, Inc.; IPS, Inc.; NA Insurance Services, Inc.; NT Distributors, Inc.; Orlandi Valuta, Inc.; Orlandi Valuta 2 Nacional, Inc.; Pension Marketing, Inc.; Shared Global Systems, Inc.; Southern Telecheck, Inc.; Technology Solutions International, Inc.; Telecheck Holdings, Inc.; Telecheck International, Inc.; Telecheck Pittsburg/West Virginia, Inc.; Telecheck Recovery Services, Inc.; Telecheck Services, Inc.; Telecheck Services Canada, Inc.; Telecheck Services of Puerto Rico, Inc.; United States Pension Services, Inc.; Western Union Communications, Inc.; Western Union Financial Services, Inc.; Western Union Financial Services Eastern Europe, Ltd.; Western Union Holdings, Inc.; Western Union Industrial Bank, Plaintiffs/Appellants,

v.

ARIZONA DEPARTMENT OF REVENUE, Defendant/Appellee.

No. 1 CA–TX 11–0008.

Court of Appeals of Arizona, Division 1.

Nov. 26, 2013.

Steptoe & Johnson, LLP By Pat Derdenger, Bennett Evan Cooper, Phoenix, Counsel for Plaintiffs/Appellants.

First Data Corporation and Its Combined Subsidiaries Arizona Attorney General's Office By Kimberly Cygan, Phoenix, Counsel for Defendant/Appellee.

Bade Baskin Richards, PLC, By William A. Richards and Multistate Tax Commission, Washington, D.C. By Shirley Sicilian, Burce J. Fort, Tempe, Counsel for Amicus Curiae Multistate Tax Commission.

## OPINION

GEMMILL, Judge.

¶ 1 First Data Corporation ("Taxpayer") challenges the Arizona Tax Court's holding that gains from the sale of a wholly-owned subsidiary are business income on its Arizona combined income tax return. Taxpayer chal-lenges the interpretation of "business income" adopted by the Arizona Department of Revenue ("Department") and the tax court. We resolved a related issue presented in *Harris Corp. v. Ariz. Dep't of Revenue*, 233 Ariz. 377, 312 P.3d 1143 (App.2013) concerning the interpretation of the "business income" definition under Arizona Revised Statutes ("A.R.S.") section 43–1131(1). Taxpayer also contends that the tax court erroneously failed to give effect to the parties' election under 26 U.S.C. ("I.R.C.") § 338(h)(10). We disagree with Taxpayer's arguments, and we affirm the tax court's judgment.

## BACKGROUND

¶ 2 Taxpayer is a Delaware corporation that maintains its corporate headquarters and domicile in Atlanta, Georgia. Taxpayer provides its customers with electronic payment services.

¶ 3 Taxpayer's wholly owned subsidiary, First Data Investor Services Group ("FDISG"), was a Massachusetts corporation with its headquarters in Massachusetts and operations in Minnesota, North Carolina, and Pennsylvania. FDISG provided processing services, which included transfer-agent services; fund administration; fulfillment and proxy services; and retirement-account record-keeping, and transaction services. FDISG focused on services for mutual funds, which Taxpayer characterizes as "not consistent" with Taxpayer's overall objectives.

¶ 4 In 1999, Taxpayer sold FDISG's stock to PNC Bank Corporation ("PNC") and realized net proceeds of approximately $725 million. Taxpayer and PNC elected to treat the sale of FDISG stock as a sale of assets by FDISG in accordance with I.R.C. § 338(h)(10). For purposes of federal income tax, FDISG was deemed to have undergone a complete corporate liquidation with the distribution of the proceeds to its sole shareholder, Taxpayer. FDISG reported the gain on its federal income tax return.

¶ 5 Taxpayer, FDISG, and other Taxpayer subsidiaries constituted a unitary business and filed an Arizona combined corporate in-

come tax return for the 1999 tax year.[1] This return reflected Taxpayer's treatment of gain on the FDISG sale as non-business income to Taxpayer.

¶ 6 Following an audit, the Department issued a notice of proposed assessment for $2,749,706.14, reclassifying the gain from the FDISG sale as business income. Taxpayer timely protested, but the Department's hearing officer ultimately upheld the portion of the assessment resulting from the FDISG sale classification.

¶ 7 Taxpayer appealed to the Arizona Tax Court pursuant to A.R.S. § 42–1254(C). The parties cross-moved for summary judgment on the income classification issue. The tax court granted summary judgment in the Department's favor in a ruling incorporating its statutory analysis in *Harris*. Consistent with that analysis, the tax court held that proceeds from FDISG were business income to Taxpayer. It then entered a final judgment and this timely appeal followed.

### ANALYSIS

¶ 8 Summary judgment is warranted when "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). We review the grant of summary judgment de novo. *Wilderness World, Inc. v. Dep't of Revenue*, 182 Ariz. 196, 198, 895 P.2d 108, 110 (1995). We also apply the de novo standard when reviewing the tax court's interpretation of statutes. *Ariz. Dep't of Revenue v. Ormond Builders, Inc.*, 216 Ariz. 379, 383, ¶ 15, 166 P.3d 934, 938 (App.2007).

¶ 9 The parties to this transaction made an election under I.R.C. § 338(h)(10). This federal statute provides:

Elective recognition of gain or loss by target corporation, together with nonrecognition of gain or loss on stock sold by selling consolidated group.

(A) In general.—Under regulations prescribed by the Secretary, an election may be made under which if—

(i) the target corporation was, before the transaction, a member of the selling consolidated group, and

(ii) the target corporation recognizes gain or loss with respect to the transaction as if it sold all of its assets in a single transaction, then the target corporation shall be treated as a member of the selling consolidated group with respect to such sale, and (to the extent provided in regulations) no gain or loss will be recognized on stock sold or exchanged in the transaction by members of the selling consolidated group.

I.R.C. § 338(h)(10). Although Arizona's statutes do not refer to § 338(h)(10), A.R.S. § 43–102(A)(2) adopts the Internal Revenue Code provisions on measurement of corporate income. Similarly, A.R.S. § 43–102(A)(3) directs the application of Internal Revenue Code definitions for corporate income. Furthermore, A.R.S. § 43–1101(1) provides that "Arizona gross income" means the federal taxable income of a corporation for the taxable year. In light of these provisions, the Department accepts the federal tax election for Arizona corporate income tax purposes and treats the sale as one of assets and not stock. *See* Ariz. Corp. Tax Rul. 98–2, at 2, 1998 WL 34102510 (1998).

¶ 10 The I.R.C. § 338(h)(10) election allows taxpayers to treat qualified stock purchases as asset purchases. Under the election, the subsidiary or target corporation is treated as if it had sold all its assets to the buyer in a taxable transaction. Ariz. Corp. Tax Rul. 98–2, at 2. The primary benefit of this tax treatment is that the purchaser receives a stepped up valuation basis normally only associated with a sale of assets. *Id.* The target corporation recognizes the gain or loss which is included in the target's current income year. After the sale, the target corporation is treated as liquidating tax-free into its selling corporation. The gain from the deemed

---

1. A group of corporations is considered to be a unitary business if there is substantial interrelationship or interdependence of basic operations between or among the corporations. *State of*

*Ariz. v. Talley Indus., Inc.*, 182 Ariz. 17, 25, 893 P.2d 17, 25 (App.1994). Taxpayer does not challenge the Department's classification of Taxpayer and its subsidiaries as a unitary business.

sale of assets is still relevant to the selling corporation, however, if the target was a member of the seller's combined unitary group. *See* Cal. Franchise Tax Rul., CR–88–254, 1988 WL 188432 (1988). Normal intrastate allocation will apply to the gain reported in the combined unitary group. *Id.* Consequently, while the election identifies the nature of the transaction, we must look to Arizona's statutes to evaluate if the gain constitutes business income.

¶ 11 Arizona imposes a corporate income tax "upon the entire Arizona taxable income of every corporation." A.R.S. § 43–1111. The Arizona legislature adopted a modified version of the Uniform Division of Income for Tax Purposes Act ("UDITPA") in order to properly account for corporate income. Under the UDITPA framework, corporate income is subject either to allocation or apportionment. Jerome R. Hellerstein et al., State Taxation ¶ 9.02 (3d ed.2009) (hereinafter "*Hellerstein*"). When corporate income is allocated, it is attributed to the particular state or states considered to be the source of the income, and when income is apportioned it is divided among the various states based on certain factors. *Id.* Under UDITPA, business income is apportioned, and nonbusiness income is allocated. *Id.*

¶ 12 The definitions of business and nonbusiness income are provided in A.R.S. § 43–1131:

1. "Business income" means income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations.

\* \* \*

4. "Nonbusiness income" means all income other than business income.

The parties have extensively briefed whether the transaction here qualified as business income under A.R.S. § 43–1131(1). As we determined in *Harris*, 233 Ariz. at 379–84, ¶¶ 5–24, 312 P.3d 1143, under § 43–1131(1), a corporate gain is business income if it satisfies either the first clause or the second clause of A.R.S. § 43–1131(1). *Accord Gan-*

*nett Satellite Info. Network, Inc. v. State, Dep't of Revenue,* 348 Mont. 333, 201 P.3d 132 (2009); *Hoechst Celanese Corp. v. Franchise Tax Bd.,* 25 Cal.4th 508, 106 Cal. Rptr.2d 548, 22 P.3d 324 (2001); *Texaco-Cities Svc. Pipeline Co. v. McGaw,* 182 Ill.2d 262, 230 Ill.Dec. 991, 695 N.E.2d 481 (1998). As we noted in *Harris,* a number of courts and various commentators label the first clause of the UDITPA definition of business income as the "transactional test" and the second clause as the "functional test." We will also use these phrases for convenience as shorthand references to the respective clauses of § 43–1131(1). We emphasize, however, that proper interpretation of § 43–1131(1) must be based on the statutory language, not the labels.

¶ 13 Under the second clause of A.R.S. § 43–1131(1), income arising from property constitutes business income if the control and use of the property is closely related to the taxpayer's regular trade or business. We further determined in *Harris* that the Department's regulation, Arizona Administrative Code ("A.A.C") R15–2D–503, was consistent with the statute. *Harris,* 233 Ariz. at 386–87, ¶ 40, 312 P.3d 1143. The regulation provides that the gain from property is business income "if the property while owned by the taxpayer was used in the taxpayer's trade or business." A.A.C. R15–2D–503.

¶ 14 Additionally, we explained in *Harris* that a liquidation exception is inconsistent with the functional test under Arizona's statutes. *Harris,* 233 Ariz. at 384, ¶ 26, 312 P.3d 1143. The functional test focuses not on the regularity of a transaction, but the function of the property within the business. We agree with the California Court of Appeal that reasoned in *Jim Beam Brands Co. v. Franchise Tax Bd.,* 133 Cal. App.4th 514, 34 Cal.Rptr.3d 874, 883 (App. 2005) that a liquidation exception cannot be reconciled with the functional test. A liquidation exception "focuses on the nature of the transaction," rather than on the relationship between the property sold and the taxpayer's business. *Id.* The extraordinary nature or infrequency of the transaction—even when it amounts to a cessation of a subsidiary or business line—is irrelevant to the

relationship of the property to the business. *See Hoechst Celanese Corp.,* 25 Cal.4th 508, 106 Cal.Rptr.2d 548, 22 P.3d 324; *Texaco–Cities Serv. Pipeline Co.,* 182 Ill.2d 262, 230 Ill.Dec. 991, 695 N.E.2d 481.

¶ 15 Taxpayer insists, however, that even states that have recognized a functional test for business income provide a liquidation exception when analyzing a I.R.C. § 338(h)(10) election. *See Am. States Ins. Co. v. Hamer,* 352 Ill.App.3d 521, 287 Ill.Dec. 692, 816 N.E.2d 659 (Ill. 1st Dist.2004); *ABB–C–E Nuclear Power, Inc. v. Dir. of Revenue,* 215 S.W.3d 85 (Mo.2007); *Canteen Corp. v. Commonwealth,* 818 A.2d 594 (Pa. Commw.Ct.2003); *McKesson Water Products Co. v. Dir.,* 23 N.J.Tax 449 (N.J. Tax Ct.2007). We do not, however, find the analysis in these cases to be persuasive. We have already rejected a liquidation exception in *Harris,* and the presence of a § 338(h)(10) election in this situation does not change our analysis. As we explained in *Harris,* embracing a liquidation exception would be inconsistent with the language of the second clause of A.R.S. § 43–1131(1). Additionally,

> Taxpayer's interpretation would result in a lack of symmetry. Assets would be depreciated and expenses deducted, reducing business income prior to disposition of the assets, but upon sale any gain would become nonbusiness income under a liquidation exception. Consequently, a single state might capture all the income while the states that had previously allowed expenses on an apportioned basis would shoulder the deductions.

*Harris,* 233 Ariz. at 385, ¶ 29, 312 P.3d 1143. For these same reasons, we reject Taxpayer's argument here.

¶ 16 We agree instead with other courts that have rejected an exception to the business income definition even in light of a deemed asset sale under I.R.C. § 338(h)(10). *See Newell Window Furnishing, Inc. v. Johnson,* 311 S.W.3d 441 (Tenn.App.2008) (holding gain under a § 338(h)(10) election constituted business income under amended UDITPA statute); *CenturyTel, Inc. v. Dep't of Revenue,* 353 Or. 316, 297 P.3d 1264 (2013) (concluding the gain after the § 338(h)(10) election was business income under state's

UDITPA regulation). Several state departments of revenue (including our own) have found the gain made under a § 338(h)(10) election to be business income under their state's UDITPA statutes. *See* Ariz. Corp. Tax Ruling 98–2, at 3; Cal. Franchise Tax Bd., CR–06–03, 2006 WL 1826773 (2006); Idaho State Tax Commission, 2005 WL 5166370 (2005); Ind. Tax Comm'n, 2005 WL 5166370 (2005). In Arizona's Corporate Tax Ruling 98–2, at 3, the Department emphasized that whether the gain resulting from a § 338(h)(10) election is to be considered business or nonbusiness income depends on an application of the second clause of A.R.S. § 43–1131(1):

> The gain from the deemed sale of the target's assets is usually treated as business income subject to apportionment. If any portion of the gain is attributable to the sale of nonbusiness assets, that portion of the gain would be treated as nonbusiness income subject to allocation.

Applying these principles, we look to the transaction that occurred in this case.

¶ 17 Taxpayer here elected to treat its sale of FDISG stock as a hypothetical sale of FDISG's assets under § 338(h)(10). FDISG was part of Taxpayer's unitary business and FDISG reported the gain from the sale of its assets on Taxpayer's combined return. This gain falls within the functional test and is properly classified as business income. Prior to their sale, FDISG's assets were used to produce business income for the Taxpayer. In previous years, Taxpayer reported the income that FDISG produced as business income on its combined corporate income tax return. Taxpayer previously treated the income that resulted from FDISG's assets as arising in the regular course of business. The disposition of those assets, therefore, constitutes business income under the second clause of A.R.S. § 43–1131(1).

## CONCLUSION

¶ 18 Because the tax court properly ruled that the gain from Taxpayer's sale of its wholly-owned subsidiary was business income under A.R.S. § 43–1131(1), we affirm.

Presiding Judge JOHN C. GEMMILL delivered the opinion of the Court, in which Judge MARGARET H. DOWNIE and Judge PETER B. SWANN, joined.